**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

**CASE NO. 23-60599CIV-SMITH**

VITAL PHARMACEUTICALS, INC., and JHO
INTELLECTUAL PROPERTY HOLDINGS, LLC,

       Plaintiffs,                               Bankr. Adv. Pro. No 23-01031 (PDR)

v.

ORANGE BANG, INC., and MONSTER ENERGY
COMPANY,

       Defendants.

_____/

**RESPONSE OF MONSTER ENERGY COMPANY AND ORANGE BANG, INC. TO
PLAINTIFF'S EMERGENCY MOTION SEEKING AN EXPEDITED
DETERMINATION OF DEFENDANTS' MOTION TO WITHDRAW THE
<u>REFERENCE</u>**

Monster Energy Company ("Monster") and Orange Bang, Inc. ("Orange Bang" and

together with Monster, "Defendants"), defendants in the above-captioned adversary proceeding

(the "Adversary Proceeding") commenced by chapter 11 debtors Vital Pharmaceuticals, Inc., and

JHO Intellectual Property Holdings, LLC ("Plaintiffs") in the United States Bankruptcy Court for

the Southern District of Florida (the "Bankruptcy Court'), respond as follows to *Plaintiffs'*

*Emergency Motion Seeking an Expedited Determination of Defendant's Motion to Withdraw the*

*Reference* [D.I. 9] and respectfully represent as follows:

For years, Plaintiffs operated a business selling energy drinks under a moniker that

infringed Defendants' "Bang" trademark.  That business model terminated after the United States

District Court for the Central District of California (the "California District Court") entered a

judgment (the "Judgment") adopting a 177-page arbitration award (the "Award").  After years of

fact-intensive trademark litigation in judicial and arbitration proceedings, the Arbitrator ruled in Defendants' favor on all claims, awarding in part $175 million in damages for Plaintiffs' infringement of Defendants' valuable trademarks. The Judgment and Award also contained a remedial provision that permitted Plaintiffs to avoid the imposition of a permanent injunction pursuant to a license under which they may pay a continuing 5% royalty.

Plaintiffs filed for bankruptcy protection on October 10, 2022. They then commenced a sale process by which they propose to sell their license for Defendants' trademark rights to a third party. Although they knew that trademark law prohibits the transfer of trademark rights without the consent of the licensor, and that Defendants would object to any transfer without such consent, and although they agreed to financing terms that, among other things, required them to select a stalking horse bidder by March 13, 2023 (later extended to March 24, 2023), Plaintiffs waited four months before commencing this Adversary Proceeding, which seeks a declaratory judgment that they may transfer their provisional trademark rights without Defendants' consent. Concurrently, they moved for summary judgment, in hopes that their self-created "emergency" would require the issue to be decided by Bankruptcy Court, a venue in which they hoped sale issues would be accorded greater weight than the trademark infringement issues addressed by the California District Court.

Defendants responded by filing with this Court a motion to withdraw the reference of the Adversary Proceeding to the Bankruptcy Court and, once withdrawn, to transfer the Adversary Proceeding to the California District Court for decision (the "<u>Motion to Withdraw the Reference</u>").[1] Federal law requires that the reference of bankruptcy-related matters to the

---

[1] *Joint Motion of Monster Energy Company and Orange Bang, Inc. for Entry of an Order Pursuant to 28 U.S.C. §§ 157(D) and 1412 and Bankruptcy Rule 5011(a) Withdrawing the Reference and Transferring Venue of Adversary Proceeding to Central District of California*, filed March 7, 2023 (D.I. 17).

Bankruptcy Court be withdrawn, *i.e.*, that an Article III court rather than a Bankruptcy Court decide, with respect to any matter that requires substantive consideration of both bankruptcy and non-bankruptcy federal law (such as the Lanham Act), and also permits such withdrawal for cause. 28 U.S.C. § 157(d).  While Defendants agree that it is premature on this Emergency Motion to consider the merits of the Motion to Withdraw the Reference, they submit that it is self-evident that the question of whether trademark rights can be transferred without consent in a bankruptcy sale requires substantive consideration of both bankruptcy and non-bankruptcy federal law, and that the fact-specific context and a court's inherent jurisdiction over its own judgment militate in any event in favor of permissive withdrawal of the reference and transfer of the Adversary Proceeding to the California District Court.

    As provided by Bankruptcy Rule 5011, Defendants moved for a stay pending a decision on the Motion to Withdraw the Reference, first to the Bankruptcy Court and then to this Court, which entered its *Order Granting Defendants' Emergency Joint Motion to Stay Adversary Proceeding* on March 29, 2023 (the "Stay Order").  The request for stay was based on a straight-forward proposition: a dispositive motion should be considered by the court in which venue is proper, and it is this Court, and not the Bankruptcy Court, which must determine where venue is proper.  Recognizing this logic, Plaintiffs now move for an expedited decision on the Motion to Withdraw the Reference, based on what they contend are urgent circumstances that require such motion be decided without a hearing within twelve days.

    Defendants do not seek to delay a determination on the Motion to Withdraw the Reference. For present purposes, however, what matters is that there is no emergency, self-created or otherwise, that requires a decision on the Motion to Withdraw the Reference to be made without a hearing prior to April 25, 2023.  First, Plaintiffs' assertion that a decision is required before an

April 24, 2023 bidding deadline is complete sham.  The approved bid procedures required that a stalking horse bid be accepted by March 13, later extended to March 24, against which the final bids would compete.  Plaintiffs did not receive a stalking horse bid, much less accept one, meaning that all such deadlines are now up in the air.  Moreover, even an immediate decision on the Motion to Withdraw the Reference will not immediately gain Plaintiffs the clarity they say is required before the April 24, 2023 bid deadline; it would decide only the venue in which the SJ Motion will be heard.  It bears mention that the failure to receive a stalking horse bid was in no way attributable to the Motion to Withdraw the Reference or the Stay Order.  Plaintiffs' belated filing of this Adversary Proceeding resulted in their setting a hearing date on their SJ Motion for March 29, 2023, five days *after* the most recent stalking horse deadline.  An April 5 hearing to approve the stalking horse bid and protections was taken off calendar.  Plaintiffs' decision to pursue a new bid protocol, *i.e.*, to obtain a ruling on the merits before bids are received, may be a logical response to their inability to obtain a stalking horse bid, but is not grounds for an emergency.

Second, significant delay beyond that which can be addressed by any emergency relief is built into the sale process.  Section 8.1(c) of the stalking horse asset purchase agreement ("APA") prepared by the Debtor provides that a condition to the closing of the sale is that "the Bankruptcy Court shall have entered a Sale Order and such Sale Order shall be unstayed and in full force and effect."  It should be no surprise that Defendants are likely to appeal any Sale Order that substantially affects the rights provided for in the Judgment issued by the California District Court.

Moreover, as reflected in the correspondence attached hereto as **Exhibit A**, both Plaintiffs and Defendants have agreed during the past week on a protocol whereby Defendants can communicate with individual bidders, through an intermediary, to come to an agreement on the

consent-related issues.  Hopefully this protocol will lead to a resolution of the consent issues that

will moot out the issues arising in the Adversary Proceeding

　　　　Accordingly, while Defendants do not seek to delay a determination on their Motion to

Withdraw the Reference, they do not agree that there are emergency circumstances that require

such a decision to be made without a hearing, which they submit should be calendared on or at

such time after April 25, 2023 as is convenient for the Court.

Dated:  April 12, 2023                    **AKERMAN LLP**

　　　　　　　　　　　　　　　　　*/s/ Michael I. Goldberg*　　　　　　　
　　　　　　　　　　　　　　　　　Michael I. Goldberg
　　　　　　　　　　　　　　　　　Florida Bar No. 886602
　　　　　　　　　　　　　　　　　Eyal Berger
　　　　　　　　　　　　　　　　　Florida Bar No. 11069
　　　　　　　　　　　　　　　　　201 East Las Olas Boulevard, Suite 1800
　　　　　　　　　　　　　　　　　Fort Lauderdale, FL 33301
　　　　　　　　　　　　　　　　　T: (954) 463-2700 /F: (954) 463-2224
　　　　　　　　　　　　　　　　　michael.goldberg@akerman.com
　　　　　　　　　　　　　　　　　eyal.berger@akerman.com

　　　　　　　　　　　　　　　　　-and-

　　　　　　　　　　　　　　　　　**PACHULSKI STANG ZIEHL & JONES LLP**[2]
　　　　　　　　　　　　　　　　　Richard M. Pachulski (pro hac vice)
　　　　　　　　　　　　　　　　　Ira D. Kharasch (pro hac vice)
　　　　　　　　　　　　　　　　　Robert J. Feinstein (pro hac vice)
　　　　　　　　　　　　　　　　　Teddy M. Kapur (pro hac vice)
　　　　　　　　　　　　　　　　　Steven W. Golden (pro hac vice)
　　　　　　　　　　　　　　　　　10100 Santa Monica Blvd., 13th Floor
　　　　　　　　　　　　　　　　　Los Angeles, CA 90067-4003
　　　　　　　　　　　　　　　　　T: (310) 277-6910 /F: (310) 201-0760
　　　　　　　　　　　　　　　　　rpachulski@pszjlaw.com
　　　　　　　　　　　　　　　　　ikharasch@pszjlaw.com
　　　　　　　　　　　　　　　　　rfeinstein@pszjlaw.com

---

[2] Michael I. Goldberg hereby certifies that the undersigned attorneys are appearing *pro hac vice* in this matter pursuant to court orders in the main bankruptcy case, and will file separate applications for *pro hac vice* admission under this Court's local rules.  See Orders entered in Bankruptcy Case No. 22-17842-PDR, dated as follows: (i) Teddy M. Kapur, October 14, 2022 [ECF No. 103]; (ii) Robert J. Feinstein, October 17, 2022  [ECF No. 133]; (iii) Steven Golden, October 17, 2022 [ECF No. 134]; (iv) Richard M. Pachulski, October 18, 2022 [ECF No. 158] ; and (v) Ira D. Kharasch, October 18, 2022 [ECF No. 159].

tkapur@pszjlaw.com
sgolden@pszjlaw.com

*Counsel to Monster Energy Company*

***AND***


**FENDER, BOLLING AND PAIVA, P.A.**

*/s/ G. Steven Fender*
G. Steven Fender, Esq.
Fla. Bar No. 060992
P.O. Box 1545
Ft. Lauderdale, FL 33302
T: (407) 810-2458
steven.fender@fender-law.com

-and-

**KTBS LAW LLP**[3]
Thomas E. Patterson, Esq. (pro hac vice)
Nir Maoz (pro hac vice)
1801 Century Park East
Twenty Sixth Floor
Los Angeles, CA 90067
T: (310) 407-4000
F: (310) 407-9090
tpatterson@ktbslaw.com
nmaoz@ktbslaw.com

*Counsel to Orange Bang, Inc.*

---

[3] G. Steven Fender hereby certifies that the undersigned attorneys are appearing *pro hac vice* in this matter pursuant to court orders in the main bankruptcy case, and will file separate applications for *pro hac vice* admission under this Court's local rules.  See Orders entered in Bankruptcy Case No. 22-17842-PDR, dated as follows: (i) Thomas E. Patterson, November 8, 022 [ECF No. 269]; (ii) Nir Maoz, November 8, 2022 [ECF No. 270].

# Exhibit A

**Ira Kharasch**

| | |
|---|---|
| **From:** | Andrew.Sorkin@lw.com |
| **Sent:** | Friday, April 7, 2023 3:35 PM |
| **To:** | Ira Kharasch; Richard Pachulski; Thomas Patterson |
| **Cc:** | homer.parkhill@rothschildandco.com; Jeffrey Cohen; luislluberas@mvalaw.com |
| **Subject:** | Side Letter |
| **Attachments:** | Cumulative Redline - MEC-OB Side Letter (LW Draft 4-7-23) vs (Pachulski Draft 4-1-23).docx |

Ira, Rich, Tom – following up on my discussion with Ira earlier, attached is the markup we'd prepared of the side letter in an effort to respond to bidder feedback, which, as I noted to Ira, was somewhat disparate and sometimes vague/general hostility toward the concepts in this side letter generally. I hope it is helpful for purposes of the further negotiations with bidders, for which the UCC professionals will serve as intermediary. In addition to the more substantive changes, you'll see we did think it appropriate to put into a somewhat longer-form agreement that includes some typical boilerplate to address issues like making this agreement bind successors and assigns, and so on.

Thanks,
Andy

**Andrew Sorkin**

**LATHAM & WATKINS** LLP
555 Eleventh Street, NW
Suite 1000
Washington, D.C. 20004-1304
Direct Dial: +1.202.637.3302
Email: andrew.sorkin@lw.com
https://www.lw.com

---

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, disclosure, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies including any attachments.

Latham & Watkins LLP or any of its affiliates may monitor electronic communications sent or received by our networks in order to protect our business and verify compliance with our policies and relevant legal requirements. Any personal information contained or referred to within this electronic communication will be processed in accordance with the firm's privacy notices and Global Privacy Standards available at www.lw.com.

**Ira Kharasch**

| | |
|---|---|
| **From:** | Richard Pachulski |
| **Sent:** | Wednesday, April 12, 2023 11:13 AM |
| **To:** | Jeffrey Cohen |
| **Cc:** | Luis Lluberas; Ira Kharasch; andrew.sorkin@lw.com; Thomas Patterson |
| **Subject:** | Fwd: Side Letter re Consent to Assignment |
| **Attachments:** | DOCS_LA-#348328-v12-March_31_Side_Letter.docx |

Jeff, attached please find the proposed Side Letter that should be provided to any of the proposed bidders who also sign an NDA for the names of the restricted potential future transferees (I will send you the proposed NDA shortly.)

I was hoping to get the Side Letter to you sooner, but after 10 days the Debtors just got back to us with a comprehensive response to the Monster/Bang settlement proposal, which Monster/Bang is in the process of evaluating.

To give you some background, in speaking to Luis last week we agreed that coming up with a comprehensive side letter for all potential buyers (one size fits all) was clearly not workable. After the call with Luis, Ira followed up with Andy Sorkin to discuss the concept of each potential buyer marking up the proposed Side Letter, as each potential buyer is doing with the APA. Andy agreed and basically said that the Committee, through Miller Buckfire, should be the intermediary in that process. In that regard, you are authorized to forward the attached proposed Side Letter with the statement below:

"To Individual Buyers:

Monster Energy Company ("Monster") and Orange Bang, Inc. ("Orange Bang") have made a substantial effort to come up with a proposed side letter (the "Side Letter") that addresses issues of consent and quality control with respect to the trademark license that they believe works not just for themselves, but for any assignee of the license. A copy of such Side Letter is attached hereto.

However, if any potential bidder has any questions or concerns about the Side Letter, both Monster and Orange Bang are willing to engage with you, through the intermediary, to address those questions and concerns. If such concerns can be addressed by some constructive modifications of the Side Letter, Monster and Orange Bang are willing to consider that.

As you may know, the Side Letter is conditioned upon Monster and Orange Bang reaching a settlement with VPX and the Committee on other issues."

I would be happy to discuss the Side Letter, the comprehensive settlement status or any other matter with you.

Regards,

Richard